IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PROFESSIONAL TRANSPORTATION
RISK RETENTION GROUP, INC., an
Alabama Corporation,

      Plaintiff,

v.

SERZULE TRANSPORT CORP, a Florida
Corporation; and POMPILIO
RODRIGUEZ-PAEZ, a Georgia Resident;

      Defendants.

No. _____

## **COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, PROFESSIONAL TRANSPORTATION RISK RETENTION GROUP ("PTTRG"), by and though its undersigned counsel, files this Complaint for Declaratory judgment against the Defendant, SERZULE TRANSPORT CORP ("Serzule"), and states as follows:

## **INTRODUCTION**

1.     This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 for a declaration concerning the parties' respective rights and obligations under a Commercial Automobile Policy issued to Serzule.

2.      PTTRG issued Commercial Automobile Policy, number PT-23020059-01, to Serzule for the period of February 23, 2023, to February 23, 2024 (the "Policy"). A copy of the Policy is attached hereto as "**Exhibit 1**."

3.      On November 23, 2023, a fatal accident occurred in Henry County, Georgia involving the following vehicles and occupants (the "Accident"):

**Vehicle 1:**   A white 2013 Volvo VNL Tractor (VIN 4V4NC9EHXDN136200) driven by Osvaldo Nunez (FL Drivers License No. N-520-640-93-050-0) ("Mr. Nunez") who was allegedly hauling a load on behalf of RUSA Trucking, Inc. ("RUSA") using a trailer owned by Amazon. The Police Report indicates that there were two minor passengers, Kenay Nunez (age 6) and Dwayne Ortiz (age 14), in Vehicle 1 at the time of the Accident as well.

**Vehicle 2:**   A 2017 Toyota Highlander (VIN 5TDKZRFH0HS196241) ("Vehicle 2") driven by Farrah T. Calloway (GA Drivers License No. 051525924) ("Ms. Calloway")

**Vehicle 3:**   A 2012 Freightliner TR (VIN 1FUJGLDR5CSBB2139) operated by Pompilio Rodriguez-Paez (GA Drivers License No. 055912610) ("Mr. Paez") allegedly as an employee of Serzule.

**Vehicle 4:**   A black 2019 Dodge Charger (VIN 2C3CDXGJ1KH576630) operated by Steve Dale Golden (GA Drivers License No. 055236453) ("Mr. Golden" or "Decedent").

A true and accurate copy of the Police Report issued in connection with the Accident is attached hereto as "**Exhibit 2**."

4.      After the Accident, Serzule sought coverage under the Policy for several matters stemming from the Accident including:

a.    A demand letter seeking payment of invoices issued by Wrecker 1, Inc. ("Wrecker 1") for site remediation, towing, disposal, and storage of vehicles after the Accident ("Wrecker 1 Demand");

b.    A lawsuit styled as *Wrecker 1, Inc. v. American Automobile Insurance Company, et al.*, Case No. STSV2024001289 in the State Court of Henry County, Georgia (the "Wrecker 1 Lawsuit"); and

c.    A lawsuit styled as *Camishe Golden, individually and on behalf of the Estate of Steve Golden v. Amazon Logistics, Inc. et al.*, Case No. 24-C04624-S7, in the State Court of Gwinnett County, Georgia (the "Golden Lawsuit").

5.    A global mediation of all claims asserted in the Wrecker 1 Lawsuit and the Golden Lawsuit (collectively, the "Underlying Lawsuits"), as well as potential claims by Ms. Calloway, took place on November 4, 2024. Shortly after the unsuccessful mediation, Wrecker 1 filed a Motion for Entry of Default and Default Judgment.

6.    PTRRG seeks a declaration as to the parties' rights and obligations under the Policy with respect to the Underlying Lawsuit and other claims arising out of the Accident.

## PARTIES

7.      PTRRG is an insurance company duly organized and existing under the laws of the State of Alabama.

8.      Serzule is a corporation duly organized and existing under the laws of the State of Florida with its principal place of business located in Middleburg, Florida.

9.      Upon information and belief, Pompilio Rodriguez-Paez is an individual domiciled in Georgia.

## JURISDICTION AND VENUE

10.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purposes of determining a question of actual controversy between the parties.

11.     This Court has jurisdiction based upon 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     An actual and justiciable controversy exists regarding the parties' respective rights and obligations under the Policy, and that controversy is ripe for adjudication.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the insurance contracts sued upon herein were made and entered into with Serzule in Middleburg, Florida.

## FACTUAL BACKGROUND

### A.    The Wrecker 1 Demand

14.    On or about November 23, 2023, Wrecker 1, Inc. issued Invoice No. 23-2124A to Serzule in the amount of $103,796.75 for services rendered in connection with the Accident.

15.    According to the Invoice, Wrecker 1 was requested by Corner Lot Towing to assist with a Towing and Recovery Incentive Program ("TRIP") activation.

16.    The Invoice indicates that the equipment and emergency response team costs were split 50/50 between Vehicle 1 and Vehicle 3.

17.    On or about November 27, 2023, Wrecker 1 issued a second invoice, Invoice No. 23-2139, to Serzule in the amount of $10,600.00 for the clean out and disposal of fresh produce from the trailer component of Vehicle 3 that was reportedly performed pursuant to directives from the Georgia Department of Agriculture after the Accident.

18.    Wrecker 1 submitted directly to PTRRG in April 2024. Upon information and belief, Wrecker 1 also issued Invoice No. 23-2124 to RY /YR and

Amazon in the amount of $69,446.75 with further notes regarding "SPLIT 50/50 WITH THE OTHER TT INVOLVED – INVOICE # 23-2124A" and a discount with description "11/7/24 (90,000.00) MONIES PAID BY AMAZON TO RELEASE THEIR TRAILER)". Invoice No. 232124A, Invoice No. 23-2139, and Invoice No. 23-2124 (collectively, the "Invoices") are attached hereto as "**Group Exhibit 3**."

### B.    The Wrecker 1 Lawsuit

19.    On May 1, 2024, Wrecker 1 filed the Wrecker 1 Lawsuit asserting claims against Defendants American Automobile Insurance Company; Amazon Logistics, Inc. d/b/a Prime; Amazon.com, Inc.; Southwind Risk Retention Group; RUSA Transportation, Inc.; Accredited Specialty Insurance Company; YR&RY Transport, LLC; Serzule; PTRRG; and Mr. Paez, and John or Jane Doe individuals and entities 1-3 (collectively, the "Wrecker Defendants"). A copy of the original complaint filed in the Wrecker 1 Lawsuit is attached hereto as "**Exhibit 4**."

20.    Wrecker 1 asserted that it was dispatched by Henry County law enforcement/ Georgia State Patrol per the rotational recovery list under Georgia's TRIP program to clear the wreckage after the Accident as required by PSC rules and regulations for the TRIP program.

21.    Wrecker 1 allegedly assessed the damage and determined that it needed a crane to lift and upright the vehicles and that recovery would require multiple towing vehicles and personnel.

22.     Wrecker 1 alleges that it hired a second company agreeing to pay it $40,000 for its equipment and manpower assistance that Thanksgiving Day for close to 7 hours.

23.     Wrecker 1 alleges that it removed each of the vehicles from the scene of the Accident for storage on its property where the vehicles remained pending payment of the recovery and storage bills.

24.     Wrecker 1 alleges that Serzule and/or its agents made a $10,000 partial payment for recovery of the tractor component of Vehicle 3 owned by Mr. Paez.

25.     Wrecker 1 alleges that Mr. Paez was the owner of the trailer component of Vehicle 3 as well.

26.     Wrecker 1 asserts that the Wrecker Defendants breached contractual obligations by failing to pay the Invoices.

27.     Alternatively, Wrecker 1 asserts that it is entitled to payment of its Invoices under a theory of quantum meruit because Defendants have been unjustly enriched by the services rendered but not paid for by the Defendants.

28.     Wrecker 1 also asserts that each of the Defendants have MCS-90 and Form F endorsements that cover their respective portions of the Invoices pursuant to O.C.G.A.  40-2-140(d)(4) & 40-1-120(c).

29.     Wrecker 1 seeks damages in the amount of $100,000 plus all attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

30.     On or about June 3, 2024, PTRRG issued its Coverage Position Letter regarding the Wrecker 1 Lawsuit wherein it disclaimed coverage for the Invoices as economic damages that do not meet the definition of "bodily injury," "property damage," or "covered pollution cost or expense" as required for coverage under the Policy. A true and accurate copy of the June 3, 2024, letter is attached hereto as "**Exhibit 5**."

31.     In the June 3, 2024, letter, PTRRG also explained that the MCS-90 Endorsement is not implicated absent a final judgment against Serzule for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

### C.    The Golden Lawsuit

32.     On or about May 20, 2024, Plaintiff Camishe Golden ("Golden") filed the original Complaint in the Lawsuit, asserting claims both individually and on behalf of the Estate of Steve Golden (the "Estate") against Defendants Amazon Logistics, Inc ("Amazon"); YR&RY Transport, LLC ("YR&RY"); Osvaldo Nunez ("Mr. Nunez"); American Automobile Insurance Company ("American");

8

Accredited Specialty Insurance Company ("Accredited"); Serzule; and Pompilio Rodriguez Paez ("Mr. Paez") (collectively, the "Golden Defendants").

33.    In the Golden Lawsuit, Golden alleges that Mr. Nunez was operating Vehicle 1 in the course and scope of his employment for YR&RY Transport, LLC and/or Amazon Logistics, Inc. when he unsafely changed lanes and collided hard with the driver's side of Vehicle 3 which was being operated by Mr. Paez in the course and scope of his employment for Serzule. A true and accurate copy of the Original Complaint filed in the Golden Lawsuit is attached hereto as "**Exhibit 6**."

34.    Upon impact, Plaintiff alleges that Mr. Paez made a "faulty evasive maneuver and failed to maintain his lane of travel…" which allegedly contributed to Vehicle 1 "jackknifing" across the lanes of Interstate 75 northbound.

35.    The Lawsuit alleges that Vehicle 4 collided with Vehicle 1 after the foregoing events and the Decedent sustained fatal injuries.

36.    In the original complaint filed in the Golden Lawsuit, Golden asserts eleven counts including:

- Negligence against Amazon (Count I);

- Negligence against YR&RY (Count II);

- Negligence against Mr. Nunez (Count III);

- Negligence against American Automobile Insurance Company and Accredited Specialty Insurance Company as Amazon's insurers (Count IV);

- Negligence against Serzule (Count V);

- Negligence against Mr. Paez (Count VI);

- Combined and Concurring Liability for Compensatory Damages (Count VII);

- Litigation Expenses and Attorney's Fees (Count VIII);

- Punitive Damages as to Amazon (Count IX);

- Punitive Damages as to YR&RY (Count X); and

- Punitive Damages as to Serzule based on its alleged intentional, knowing, willful, reckless and wanton disregard or conscious indifference to consequences of their alleged misconduct (Count XI).

37.    Based on the foregoing, Golden sought damages based on the Golden Defendants' alleged negligence and negligence per se including both general and special damages related to the Decedent's fatal injuries and loss of property.

38.    In an Amended Complaint filed on or about July 24, 2024, Golden alleges that Mr. Nunez was an employee and/or agent of Amazon; RUSA Trucking, Inc. and RUSA Transportation, Inc. (collectively, "RUSA"); and/or YR&RY. Plaintiff further amended Count II to assert negligence against YR&RY and/or RUSA and amended Count IV to assert negligence against Zurich American Automobile Insurance Company ("Zurich"); Southwind Risk Retention Group, Inc. ("Southwind") and Accredited. Finally, Plaintiff added Count VI

asserting Negligence against PTRRG, however, Count VI was subsequently dismissed as a matter of law. A true ad accurate copy of the Amended Complaint filed in the Golden Lawsuit is attached hereto as "**Exhibit 7**."

39.    On August 21, 2024, PTRRG issued its Coverage Position Letter regarding the Golden Lawsuit wherein it agreed to provide Serzule and Mr. Paez with a defense subject to a full and complete reservation of its rights under the Policy and at law. A true and accurate copy of the August 21, 2024, Letter is attached hereto as "**Exhibit 8**."

### D.    The Global Mediation & Status of the Underlying Lawsuits

40.    On November 4, 2024, the parties to the Underlying Lawsuits and other interested parties engaged in a global mediation but were unable to reach a resolution.

41.    On or about November 8, 2024, Wrecker 1 filed its Motion & Brief in support of Entry of Default & Default Judgment against Defendants YR&RY, Serzule, and Mr. Paez. A copy of Wrecker 1's Motion & Brief is attached hereto as "**Exhibit 9**."

42.    Wrecker 1's Motion & Brief have not been set for hearing due to its counsel having moved to withdraw from its representation filed on December 20, 2024.

## THE POLICY

43.     Section II. A. of the Policy provides Covered Autos Liability Coverage

as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".
>
> We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

44.     Section VI. of the Policy defines the following relevant terms:

> **A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".
>
> **B.** "Auto" means:
>   **1.** A land motor vehicle, "trailer" or semi trailer designed for travel on public roads; or
>   **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>   However, "auto" does not include "mobile equipment".

12

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". "Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

    Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

  **1.** A lease of premises;

  **2.** A sidetrack agreement;

  **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

  **6.** That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured

contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section **II,** Paragraph **A.1.d.** of the Who Is An Insured provision.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**L.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**O.** "Property damage" means damage to or loss of use of tangible property.

**P.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**R.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

45.    Section II. B. of the Policy provides the following relevant exclusions:

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

\* \* \*

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

46.    The MCS-90 Endorsement appended to the Policy provides:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with

16

Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

47.    The MCS-90 Endorsement defines the following terms:

**Accident** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**Motor Vehicle** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**Bodily injury** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**Property Damage** means damage to or loss of use of tangible property.

**Environmental Restoration** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**Public Liability** means liability for bodily injury, property damage, and environmental restoration.

## COUNT I - DECLARATORY JUDGMENT
### The Policy Does Not Apply to the Wrecker 1 Lawsuit

48.    PTRRG hereby adopts by reference the allegations contained in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.    The Policy provides coverage for those sums an insured becomes legally obligated to pay for "bodily injury," "property damage," and/or "covered pollution cost or expense" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

18

50.     The Policy defines "bodily injury" as bodily injury, sickness or disease sustained by a person including death resulting from any of these.

51.     The Policy defines "property damage" as damage to or loss of use of tangible property.

52.     The Policy defines "covered pollution cost or expense," in relevant part, to include any cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" or any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

53.     "Covered pollution costs or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" that are, or that are contained in any property that is in the course of transit by or on behalf of the "insured" that are fuels, lubricants, fluids, exhaust gases or other similar "pollutants" needed for or resulting from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if the "pollutants" escape, seep, migrate or are

discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants."

54.     The damages sought in the Wrecker 1 Lawsuit are economic damages, associated with removing vehicles, cleaning up wreckage after the Accident, towing and storage costs, and the costs for the disposal of the cargo being hauled by Serzule at the time of the Accident.

55.     To the extent the Wrecker 1 Lawsuit asserts damage in the form of costs to cleanup fuels, lubricants, fluids, exhaust gases or similar "pollutants," these are not "covered pollution cost or expense" because these are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if the "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants."

56.     The damages sought in the Wrecker 1 Lawsuit do not constitute "bodily injury," "property damage" or "covered pollution cost or expense" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

57.     In the Golden Lawsuit, the damages sought are for fatal injuries sustained by Mr. Golden as well as direct physical injury and loss of use of Vehicle 4.

58.    The Golden Lawsuit appear to qualify as "bodily injury" and "property damage" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

59.    PTRRG thus seeks a declaration that the Policy is only potentially implicated by the Golden Lawsuit and there is no coverage under the Policy for the damages sought in the Wrecker 1 Lawsuit.

## COUNT II – DECLARATORY JUDGMENT
### In the Alternative, Exclusions Bar Any Coverage for the Wrecker 1 Lawsuit

60.    PTRRG hereby adopts by reference the allegations contained in Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.    To the extent the Policy is potentially implicated by any of the damages sought in the Wrecker 1 Lawsuit, Exclusion 2. precludes coverage for liability assumed under any contract or agreement except with respect to damages assumed in an "insured contract" or that the "insured" would have in the absence of the contract or agreement.

62.    To the extent the Policy is potentially implicated by any of the damages sought in the Wrecker 1 Lawsuit, Exclusion 6. precludes coverage for "property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control.

63.     The Wrecker 1 Lawsuit seeks payment of the Invoices as contractual obligations the Wrecker Defendants were obligated to pay.

64.     The Wrecker 1 Lawsuit seeks damages for the costs associated with recovery and removal of Serzule's property after the Accident.

65.     The Wrecker 1 Lawsuit seeks damages for the costs associated with disposing of Serzule's cargo after the Accident.

66.     To the extent the Covered Autos Liability Insuring Agreement were potentially implicated by the Wrecker 1 Lawsuit, Exclusion 2. and Exclusion 6. preclude any coverage under the Policy.

67.     PTRRG thus seeks a declaration that there is no coverage for the Wrecker 1 Lawsuit under the Policy.

## COUNT III – DECLARATORY JUDGMENT
### The MCS-90 Endorsement Does Not Apply to the Wrecker 1 Lawsuit

68.     PTRRG hereby adopts by reference the allegations contained in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     The Policy also includes an MCS-90 Endorsement with minimum financial responsibility limits designated in the amount of $750,000 which are the limits of liability applicable to each accident.

70.     Pursuant to the MCS-90 Endorsement, PTRRG agreed to pay, within the limits of liability describe herein, any final judgment recovered against Serzule for public liability resulting from negligence in the operation, maintenance or use

of motor vehicles subject to the requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere, except with respect to injury to or death of the insured's employees while engaged in the court of their employment, or property transported by the insured, designated as cargo.

71.    The MCS-90 Endorsement provides the insured agrees to reimburse PTRRG for any payment made on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

72.    The MCS-90 Endorsement defines "public liability" as liability for bodily injury, property damage, and environmental restoration.

73.    The MCS-90 Endorsement defines "bodily injury" as injury to the body, sickness, or disease to any person, including death resulting from any of these.

74.    The MCS-90 Endorsement defines "property damage" as damage to or loss of use of tangible property.

75.    The MCS-90 Endorsement defines "environmental restoration" as restitution for the loss, damage, or destruction of natural resources arising out of

the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

76.    The requirements of Section 29 and 30 of the Motor Carrier Act of 1980 mandate that all motor carriers operating in *interstate* commerce must maintain proof of minimum financial responsibility by carrying an insurance policy with an MCS-90 Endorsement or another form of Motor Carrier Surety Bond verified by the Federal Motor Carrier Safety Administration (FMCSA).

77.    In the Wrecker 1 Lawsuit, Wrecker 1 seeks payment of the Invoices for towing, storage, disposal of cargo, and the removal of wreckage from the scene of the Accident in Henry County, Georgia.

78.    The Golden Lawsuit arises out of the same Accident in Henry County, Georgia.

79.    The MCS-90 Endorsement does not apply to the damages sought in the Wrecker 1 Lawsuit which do not constitute damages for "public liability" resulting from negligence in the operation, maintenance or use of motor vehicles subject to the requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

## PRAYER FOR RELIEF

**WHEREFORE**, PTRRG prays that this Court enter an order granting the following declaratory relief:

1.       The damages sought in the Wrecker 1 Lawsuit do not constitute "bodily injury," "property damage" or "covered pollution cost or expense" caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos," and therefore the Policy is not potentially implicated by the Wrecker 1 Lawsuit.

2.       Even if the Policy's Covered Autos Liability Insuring Agreement were satisfied by the allegations of the Wrecker 1 Lawsuit, Exclusion 2. (Contractual) and Exclusion 6. (Cargo) would bar any coverage for the damages sought therein;

3.       The MCS-90 Endorsement is not potentially implicated by the Wrecker 1 Lawsuit because the Policy affords coverage for the Golden Lawsuit which results from the same Accident.

4.       The MCS-90 Endorsement is not potentially implicated by the Wrecker 1 Lawsuit because Wrecker 1 does not seek damages for "public liability" resulting from negligence in the operation, maintenance or use of motor vehicles subject to the requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

5.       Any other relief this Honorable Court deems equitable and just.

Respectfully submitted this 20th day of March, 2025.

**COZEN O'CONNOR**

By: /s/    *Nicole Connors*

Nicole T. Connors, Esq.
Florida Bar No. 118146
1801 N. Military Trail, Suite 200
Boca Raton, Florida 33431
Telephone: (561) 245-6192
nconnors@cozen.com

Gary L. Gassman (*pro hac vice forthcoming*)
Illinois Bar No. 6217204
Abigail C. Horvat (*pro hac vice forthcoming*)
Illinois Bar No. 6336060
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: (312) 474-7130
ggassman@cozen.com
ahorvat@cozen.com
*Attorneys For Plaintiff, Professional
Transportation Risk Retention Group, Inc.*