# EXHIBIT "9"

🏛 **EFILED IN OFFICE**
CLERK OF STATE COURT
HENRY COUNTY, GEORGIA

**STSV2024001289**
RBJ
**NOV 08, 2024 05:04 PM**

*Lynne M. Policaro*
Lynne M. Policaro, Clerk of State Court
Henry County, Georgia

IN THE STATE COURT OF HENRY COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| WRECKER 1, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. STSV2024001289 |
| | ) | |
| AMERICAN AUTOMOBILE | ) | **JURY TRIAL DEMANDED** |
| INSURANCE COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**1.  MOTION & BRIEF IN SUPPORT OF ENTRY OF
DEFAULT & DEFAULT JUDGMENT AGAINST DEFENDANTS
YR&RY, SERZULE, POMPILO RODRIGUEZ-PAEZ,**

**2.  OPPOSITION TO YR&RY'S MOTION TO OPEN DEFAULT, and**

**3.  MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANTS ACCREDITED SPECIALTY INSURANCE COMPANY,
RUSA TRUCKING & YR&RY**

COMES NOW Plaintiff Wrecker 1, Inc. and shows the Court as follows:

**OVERVIEW**

Plaintiff operates a tractor and trailer recovery, towing, and storage business

in Henry County, and is a participant in the State of Georgia's TRIP program to

clear tractor and trailer wrecks off of major highways, including I-85. *See Exhibit*

*1, TRIP Program AJC Article November 3, 2024*.

https://www.ajc.com/news/atlanta-news/gridlock-guy-big-rig-crashes-clear-far-

more-quickly-with-gdots-trip-program/YYZM3RSRTJEEFEQXLY23EQKVLA/

On November 23, 2023 another towing and recovery business, Corner Lot, received a TRIP notification from GSP to remove a two tractor and trailer, passenger vehicle collision from the roadway on I-85 in Henry County in the early am hours. *See Exhibit 2, Incident Report.*

YR&RY's driver in a tractor owned by defendant RUSA Trucking and the trailer it was hauling for Amazon started a chain reaction collision, Seruzule's tractor and trailer was involved and overturned on the side of the road after leaving the roadway, and YR&RY's tractor and trailer was disabled in the roadway blocking all lanes before Steve Golden under-rode that Amazon trailer causing a fatal collision. Steve Golden, a good man, retired military officer and federal law enforcement contractor was essentially decapitated in the crash. *Exhibit 2, Incident Report.*

Wrecker 1 was called in by GSP/GDOT and Corner Lot to clear the scene as Corner Lot did not have sufficient equipment to clear the scene. A simple look at the photographs at the scene show the time, effort, etc. from the crash scene and the millions of dollars of equipment deployed to clear the scene. *Exhibit 3, Recovery Photographs.*

Wrecker 1 sent bills to Amazon, YR&RY, RUSA and Serzule for the cost of recovery, environmental cleanup, and removal of their tractors, trailers, and cargo

from the scene but they refused to pay it then, and they refuse to pay it now. Daily

storage of these tractors and trailers is $250.00 (two hundred and fifty dollars per

day).  Corner Lot sent Wrecker 1 a separate $40,000 plus bill for its work prior to

Wrecker 1 taking over at the scene. *Exhibit 4, Corner Lot Bill*.

All defendants requested a "global mediation" to resolve their claims, and a

grand sum of $0 was offered to Wrecker 1 and the Golden claimant on the excuse

of "coverage issues," but a $21,000 plus mediation bill flowed from the mediator

defendants chose. *Exhibit 5, Mediation Bill*. Divide and conquer, bleed them out

with costs might work as a defense strategy in some matters--good luck with that

strategy here.

Amazon approached Wrecker 1 through its counsel prior to mediation and

the claims for removal, recovery and storage of its trailer has been resolved,

confidentially in advance of this motion and prior to mediation.

YR&RY, Serzule and Serzule's driver and owner of the trailer he was

hauling, Pompilio-Paez are in default here. Since June they have been in default,

and the excuse YR&RY offer for its default is flimsy at best, and deficient in law

as set out below.

There are no coverage issues here as set out below and as set out in the

motion to dismiss response, and default judgment on the liquidated damages

amounts owed and due here.

Accompanying this motion is a request for oral hearing and a statement of
undisputed material facts supporting the grant of summary judgment.

## ARGUMENT & CITATION OF AUTHORITY

Georgia has adopted the FMCSA regulations, including 49 C.F.R. § 390.5,
as provided by O.C.G.A. §§ 40-1-51, 40-1-54, & *Ga. Comp. R. & Reg. § 1-1*
*Georgia Department of Public Safety Transportation Rulebook, Chapter 1-1 Motor*
*Carrier Safety Regulations.  See Exhibit 6, Georgia Motor Carrier Compliance*
*Division Regulations.  https://dps.georgia.gov/georgia-department-public-safety-*
*transportation-rulebook*

The FMCSA Regulations apply to all motor carriers operating in Georgia, as
a matter of law, whether they be intrastate or interstate motor carriers for hire. *Id.*

YR&RY, RUSA Trucking and Serzule were motor carriers for hire at the
time of the collision in this case. *See Exhibit 7, YR&RY FMCSA SAFER Motor*
*Carrier for Hire Authorization; Exhibit 8, RUSA Trucking FMCSA SAFER Motor*
*Carrier for Hire Authorization; Exhibit 9, Serzule FMCSA SAFER Motor Carrier*
*for Hire Authorization.*

49 C.F.R. § 390.5 in pertinent part reads as follows for motor carriers
authorizing, consenting to the removal of their equipment from the roadways
during motor carrier operations if a collision occurs:

> *Emergency* means…; **or a request by a police officer for tow trucks to**
> **move wrecked or disabled motor vehicles**. (emphasis supplied)

See https://www.law.cornell.edu/cfr/text/49/390.5

There is no dispute, none, that YR&RY, RUSA Trucking and Serzule knew
and consented to law enforcement having the authority to request recovery
operators such as Wrecker 1 to remove their disabled commercial motor vehicles
from the roadway following a collision, as part of the FMCSA Regulations that
govern their motor carrier operations. *Id.*

Defendants YR&RY, RUSA Trucking and Serzule simply wish to avoid the
cost of that removal, and the law does not support that position.

I.   **Entry of Default & Default Judgment Against YR&RY, Serzule &
     Pompilio Rodriquez-Paez**

*a. Default Against Serzule & Pompilio Rodriguez-Paez*

Serzule and Rodriguez-Paez were personally served with plaintiffs'
complaint and summons on May 10, 2024 and May 12, 2024, as shown by the
Affidavits of Service filed with this Court on May 29, 2024. *See Docket Entries 94
& 96.*

Serzule and Rodriguez-Paez have failed to answer and are in default. See
O.C.G.A. § 9-11-55.

The invoice for the towing, recovery and storage owed by Serzule through
December 11, 2024, 33 days after the filing of this motion is $168,546.75. *See*
*Exhibit 10, Serzule Invoice*. After December 11, 2024, storage for the tractor and

trailer Serzule was operating at the time of the crash increases by $250.00 (two hundred & fifty dollars) for each piece of equipment stored per day, for the daily storage of the tractor and the trailer on Wrecker 1's lot, or $500.00 (five hundred dollars) per day for the commercial motor vehicle combination Serzule was operating.

The amount owed by defendants Serzule and Rodriguez-Paez for the removal of their equipment being operated by Serzule in the course of its motor carrier for hire operations is a *liquidated* amount, not unliquidated damages.

The amount owed and due for attorneys' fees and costs is equal to the 40% percent of the recovery by Wrecker 1 per agreement with its counsel, and evidence of that agreement and hourly rates will be presented at oral hearing on the amounts owed and due and for which defendants have defaulted. See *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 93, 885 S.E.2d 671, 708 (2023) [As it noted in its order on attorney fees, the trial court considered the affidavits submitted by Taylor's attorneys and found that the "40% contingency fee is usual and customary and is reasonable under the circumstances in this case."]

Defendants are in default, have acted in bad faith in refusing to pay the liquidated damages owed and due for the services rendered, and have caused plaintiffs unnecessary cost and expense through their stubborn litigiousness including a $3,200.00 mediation bill of a total $21,000 plus mediation bill that

Serzule's and others insurers requested as part of a "global mediation," only to claim at the $21,000 mediation/party that they were offering $0 because of unspecified "coverage issues."  Serzule and Rodriguez-Paez are in default, as is YR&RY and it is time to pay the liquidated damages and attorneys' fees and costs owed.

Additionally, Serzule was carrying produce at the time of the crash and the Georgia Dept. of Agriculture ordered and supervised that destruction of the produce by Wrecker 1, which is an additional $10,000.00 plus cost as shown by the invoices accompanying this demand.

Plaintiff respectfully requests that the Court enter default against Serzule and Rodriguez-Paez for the liquidated towing, recovery, and storage bill it owes, plus all attorneys' fees and costs attendant to that bill for which they are in default too. See O.C.G.A. § 13-6-11, Taylor, supra; *Health Servs. of Cent. Georgia, Inc. v. Wanna*, No. A24A0909, 2024 WL 4510794, at *11 (Ga. Ct. App. Oct. 17, 2024).

    ***b.  YR&RY Is In Default Because Its Counsel of Record & Accredited Specialty Insurance Company Intentionally Eyes Open Allowed It To Go Into Default, And Have Filed False Affidavits Thereafter In Support of Opening Default***

In March and April of this year before plaintiffs filed suit in this matter in May 2024, appointed panel counsel by Accredited Specialty—Nanninga and his

partner Mr. Brunetz—repeatedly and consistently wrote plaintiff's counsel in

emails that "***We have YR & RY Transport through Accredited Specialty***

***Insurance Company.  Let me see what I can dig up and get to you as a more***

***formal response.***" <u>Exhibit 22</u>, *April 9, 2024 Email (emphases)*

When Nanninga and Brunetz failed to respond to a request to pay the

invoices--they have yet to provide a declarations page as requested under O.C.G.A.

§ 33-3-28 or a policy requested in discovery--suit was filed against YR&RY and

Accredited Specialty (hereinafter or alternatively "ASIC") on May 1, 2024. Both

ASIC and YR&RY were served in May and Affidavits of Service were filed with

the Court on May 29, 2024. *See Docket Nos. 88 & 92*.

In emails thereafter all the insurers immediately wanted a "global

mediation" with Vic Faenza, a great mediator for 7 and 8 figure death cases, but

super expensive including the $21,000 plus bill sent by him in this matter.

In emails in June and July Nanninga and Brunetz, including on emails

copying Accredited's counsel at Baker Donelson, wrote that they would be

defending YR&RY in the wrongful death litigation, but that would not defend it on

Wrecker 1's claims. *See Statement of Facts*.

In fact on July 3, 2024 Nanninga wrote: "***I have permission now o/b/o YR***

***RY for the WD claims***.  ***Not representing them in the wrecker 1***

***lawsuit.  Thanks***" *See* <u>Exhibit 25</u>, *July 3, 2024 Email.* An email sent by Nanninga

within the 45-day period under Rule 55, when he was representing YR&RY on the

wrongful death claims arising out of this incident.

     Later that month on July 25, 2024—after YR&RY is 57 days past the time to

answer, where eyes open Accredited, its counsel and Nanninga let YR&RY go into

default —Nanninga wrote in an email that "*Terry,  I left you a voicemail*

*today.  We've been asked if we can rep YR&RY in the Wrecker1 lawsuit as well.  I*

*believe they may be in default.  Would you consent to open and allow us to*

*answer?  We are around tomorrow if you'd like to discuss.  Thank you.   Matt.*"

*Exhibit 26, July 25, 2024 Email.*

     *Believe that it may be in default?*—Accredited Specialty, its counsel, Drew

Eckl on behalf of YR&RY in the wrongful death case were actually, specifically

aware of the Wrecker 1 lawsuit and service on YR&RY throughout May, June and

July, and simply let YR&RY go into default. *See Statement of Facts & Exhibits*

*thereto at ¶¶ 22-31.*

     Why would a party allow a defendant's counsel to open default where the

Insurer and Counsel intentionally, eyes open let it go into default while discussing

a "global mediation" for two months that was consented to by all parties? YR&RY

is in default, and its counsel and Accredited Specialty allowed YR&RY to go into

default.

     On July 3, 2024 when Nanninga wrote all parties in the wrongful death

litigation and Wrecker 1 litigation that he was defending YR&RY in the death case but not the Wrecker 1 case begs the question; why did appointed counsel not inform YR&RY by simple writing, email, etc. telling it of that position, such as;

> "Mr. Ortiz, I have been retained to defend you in the Golden wrongful death lawsuit, but I will not file an answer on your behalf in the Wrecker 1 case, and by the way you are in default, but you have until July 13[th] to file an answer, pay costs, and open default and you will be fine."

Instead, appointed counsel and Accredited Specialty knowingly allowed YR&RY to go into default. A plain read of Nanninga's affidavit at ¶¶ 2 & 3 states under oath to this Court that:

> *"2. On July 24, 2024, I was contacted by Erika Anderson with EMA Risk Services and agreed to represent YR & RY Transport, LLC in this suit."*
>
> *"3. **Our office immediately began investigating this matter, including reviewing the Court Docket and determining the status of service of process**. On July 25, 2024, we reached out to Plaintiffs counsel to discuss an agreement to open default."*
>
> *Affidavit of Matthew Nanninga, Docket No. 136. (emphasis supplied)*

It is hard to reconcile these sworn statements to the Court, when the Court now has the March-July emails before it showing that both Accredited Specialty and outside counsel for YR&RY go into default—eyes open go into default. *See*

*Exhibits 22-26*, *April 9, 2024 – July 25, 2024 emails*.

Ortiz's affidavit is even worse for Accredited Specialty and YR&RY, he testifies that he was served and Accredited was aware of service on YR&RY as reflected on the May 29, 2024 docket entries for the affidavits of service, but that he was not filing an answer unless his insurer paid counsel to do so on YR&RY's behalf, and Accredited Specialty was aware of the suit! *See Ortiz Affidavit*, *¶¶ 4-6, Docket No. 138*.

Tripling down on the gaffe, Accredited Specialty filed a motion to dismiss the indemnity claims against it with its answer on June 28, 2024, knowing all the while it let its insured knowingly go into default the same day, when it could have opened that default in June and July when it was busy writing emails about a bogus "global mediation." *See Accredited Specialty Motion to Dismiss, Docket No. 108*.

There is no providential cause, excusable neglect or showing of a proper case shown by the record and YR&RY's motion to open default in this case. The Motion to Open Default should be denied and plaintiff's Motion for default judgment on the liquidated damages amount entered by the Court. O.C.G.A. § 9-11-55. Nor has the complaint and motion been verified, under oath, as required by O.C.G.A. § 9-11-55(b).  There is no defense to Wrecker 1's claims for deploying millions of dollars of equipment—wreckers, cranes, bobcats, dumpsters, low boys,

personnel, etc. shown in the photographs at *Exhibit 3, Wrecker 1 Photographs* to clear this collision over a 7-hour period on Thanksgiving Day.

All defendants owe the amounts claimed, the insurers have simply turned on their insureds hoping to avoid the cost of clearing the risk they insured. The affidavits offer no meritorious defense, etc., merely excuses for not timely answering the complaint—that's it.

"Appellant waited over a month to file its motion to open the default, and has presented no explanation for the delay. The trial court could take this unexplained delay into consideration as a factor in determining whether to exercise its discretion to open the default." *Broadcast Concepts, Inc. v. Optimus Financial Services, LLC*, 274 Ga. App. 632, 634, 618 S.E.2d 612, 615 (2005).

Accredited and its panel counsel knew that YR&RY was in default yet waited from June 28, 2024, when the answer was due, until September 25, 2024 to file the motion to open default, which is no legal reason to open default here. *Id. See also* § 23:14. Opening a default, Ga. Practice & Procedure § 23:14 (2024-2025 ed.)

In *Ellis v. Five Star Dodge, Inc.*, 242 Ga. App. 474, 529 S.E.2d 904 (2000) the Court wrote why it was an abuse of discretion to open default where the insured knew an answer was due and failed to ensure its insurer would file an answer:

Trial court granted the defendant's motion to open the default on the basis of excusable neglect. **This ruling was an abuse of discretion**, because the defendant's actions failed to demonstrate excusable neglect as a matter of law. **First,** the defendant herein cannot establish that it, in fact, forwarded the complaint to the insurance company. **Second**, if the defendant mailed the complaint, because of the many methods which now exist for communicating and transmitting documents, exclusive reliance on the postal service for communicating the existence of a legal complaint between client and attorney is insufficient to show providential cause or excusable neglect. **Third, it is undisputed that the defendant did nothing to ensure that the case had been received by the insurance company or that an answer would be filed.** Court of Appeals cannot condone such inaction. Since the defendant failed to establish a ground for opening the default under O.C.G.A. § 9-11-55(b) as a matter of law, the trial court abused its discretion in so ruling. Case is reversed and remanded to the trial court for reinstatement of the default judgment and the determination of damages thereon.

*Ellis v. Five Star Dodge, Inc.*, 242 Ga. App. 474, 529 S.E.2d 904 (2000) (emphases supplied).

Here Mr. Ortiz plainly states in his affidavit he knew YR&RY's insurer was on notice—it is a party to this case and was served too—but that he was not going to file an answer due to costs unless Accredited Specialty hired a lawyer to defend YR&RY. *Ellis, supra*. Ortiz did nothing to ensure a timely answer was filed, by his own affidavit, and there is consequences to that decision.

If he has beef with anyone, it is with Accredited Specialty and his appointed counsel who knew about service upon YR&RY, but simply let it go into default. No providential cause, excusable neglect, or proper case is shown here. *Id.*

Respectfully, how on earth is any defendant to this case able to assert in good faith any defense or even a meritorious case to Wrecker 1's claims for

payment arising out of Wrecker 1's response to the scene of this crash to remove

from the roadway two tractors and trailers involved in a fatal accident, blocking all

lanes of I-85 North on Thanksgiving day, there is no defense, meritorious case or

"proper case" to open default here. *See Samsung Electronics America, Inc. v.*

*Brewer*, 368 Ga. App. 608, 616, 890 S.E.2d 498, 505 (2023); § 23:14. Opening a

default, Ga. Practice & Procedure § 23:14 (2024-2025 ed.).

Further, there is no verified pleading here or even a sworn oath that there is a

good faith meritorious defense here as required. "The Brazells failed to satisfy the

first condition precedent of a showing made under oath. It is undisputed that the

motion to open default was not made under oath. Also, although their amended

answer was verified, in it they merely claimed that they have good and meritorious

defenses. A merely conclusory statement cannot constitute a showing under oath

pursuant to O.C.G.A. § 9-11-55(b)." *Brazell v. J.K. Boatwright & Co. P.C.*, 324

Ga. App. 502, 751 S.E.2d 133 (2013). There is no defense to this case, and

certainly none supported by any evidence, record in support of the motion to open

default, and it should be denied because it is procedurally defective too.

The law is clear that:

1. OCGA § 9–11–55(b) permits a default to be opened on one of three
grounds if four conditions are met. The three grounds are (1) providential
cause, (2) excusable neglect, and (3) proper case. The four conditions are the
defendant's (1) showing made under oath, (2) offer to plead instanter, (3)
announcement of ready to proceed with trial, and (4) setting up a meritorious
defense.[2] "Whether to open the default on one of these three grounds rests

within the discretion of the trial judge."[3] On appellate review of a trial
court's order granting a motion to open default, we must determine "whether
all the conditions set forth in OCGA § 9–11–55 have been met and, if so,
whether the trial court abused its discretion based on the facts peculiar to
each case."[4]

*Flournoy v. Wells Fargo Bank, N.A.*, 289 Ga. App. 560, 562, 657 S.E.2d

625, 627 (2008).

YR&RY can show none of the three grounds to open default, nor a pleading

under oath or a meritorious defense as part of the required additional four

conditions to open default, and the Motion to Open default should be denied as a

matter of law. O.C.G.A. § 9-11-55(b); *Flournoy, supra*.

## II.    <u>Summary Judgment Is Proper Against RUSA Trucking, Accredited</u> <u>Specialty & YR&RY</u>

Plaintiff moves for summary judgment against the above defendants as there

is no genuine issue of material fact in dispute as to their liability for towing,

recovery and storage costs here. O.C.G.A. § 9-11-56. Plaintiff moves for summary

judgment against YR&RY in the event the Court opens default against it, as it

owes the towing, storage and recovery costs to remove its commercial vehicle

combination from the roadway.

Again, a simple viewing of the photographs in removing these tractor and

trailers from the roadway with millions of dollars in equipment shows the effort

involved that Thanksgiving morning. *Exhibit 3, Wrecker 1 Photographs*.

YR&RY and RUSA Trucking were moving freight from Tampa to East

Point for Amazon in an interstate trip, using RUSA's tractor shown on the incident

report and MCCD inspection reports filed with this motion.

Accredited Specialty Insurance Company (ASIC), YR&RY and RUSA

Trucking are liable for the recovery, cleanup, etc. costs attendant to removing their

and Accredited's insured's commercial motor vehicles from the roadway, as a

matter of law, under the MCS-90 endorsement and as previously briefed to the

Court, as explained below.

The MCS-90 Endorsement under the FMCSA regulations covers acts of

negligence resulting in torts or contract injuries to third parties, the public. See 49

C.F.R. § 387.15. The same is true of the Form F endorsement for intrastate trips,

and the obligations under Georgia's Motor Carrier Compliance Division

Regulations in their current iteration. Ga. Comp. R & Regs. § 570-38-2(8) Motor

Carrier Compliance Division, Department of Public Safety, See

https://rules.sos.ga.gov/gac/570-38-2 .

The Form F is the state law counterpart for intrastate trips to the MCS-90

Endorsement for interstate trips.

The Georgia Supreme Court has held as follows regarding Form F

endorsements protecting the public from negligent motor carriers:

> The "Form F" endorsement which National Indemnity and Kinard executed
> and which was filed with the PSC stated that it amend[ed] the policy to
> provide insurance for automobile bodily injury and property damage liability
> in accordance with the provisions of such law or regulations [promulgated

by the PSC] to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

By executing the "Form F" endorsement, National Indemnity agreed **to provide** the automobile bodily injury and **property damage liability coverage for losses caused by the motor common carrier's vehicles not specifically identified in the insurance policy** that PSC Rule 1–8–1–.01 required.

*Ross v. Stephens*, 269 Ga. 266, 269, 496 S.E.2d 705, 708 (1998).

The Supreme Court of Georgia followed that opinion by holding that if an insurer issues a policy to an insured it knows is a motor carrier for hire, and the policy does not have the Form F or MCS-90 endorsements required by law, the policy will be conformed to a motor carrier for hire policy with coverage up to full limits of the policy as a matter of law:

[w]here **Canal was on notice of EDB's status as a motor carrier and thus of its need to obtain motor carrier coverage**; and where EDB was not informed of nor otherwise had reason to believe the policy it was issued fell short of the coverage it was required by law to maintain, **Canal is subject to a direct action under the Motor Carrier Act by third parties injured by virtue of EDB's negligence**.

\*\*\*

**To summarize the above, we now hold that, when an insurer purports to issue coverage to an insured which it knows is a motor carrier, the insurer assumes responsibility to indemnify the motoring public for injuries sustained by virtue of the carrier's negligence in at least the minimum amount statutorily required under the Motor Carrier Act and up to the policy limits, notwithstanding any provisions in the insurance policy to the contrary**. Any other result under the circumstances

presented here would have the effect of rewarding an insurer for its insured's noncompliance with the law and its own duplicity or negligence in failing to supply the appropriate type of coverage to its insured, all to the detriment of the motoring public and contrary to the purpose of the Act

*Sapp v. Canal Ins. Co.*, 288 Ga. 681, 684, 706 S.E.2d 644, 648, 650 (2011) (emphasis supplied)

Further, and to the point, federal case law interpreting the MCS-90 under 49 C.F.R. § 387.15 is also clear that the endorsement covers towing, recovery, environmental damage, cleanup, etc. arising out of the insured's **negligence** in causing a collision as property damage.

In one of the earliest such decisions the W.D. of Oklahoma held that the MCS-90 endorsement covers $100,000 environmental recovery cost for a negligent motor carrier and that if the insurer has a complaint it has a remedy, it can recover them from the motor carrier which is the insurer's remedy under the FMCSA regulation:

Applying the MCS-90 endorsement, though, does not alter the terms of the policy or increase Global Hawk's actual liability. The endorsement is no more than a *surety* obligation, which is why it provides that "[t]he insured agrees to reimburse the company for any payment made by the company ... that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in the endorsement." *Yeates*, at 881 (citing 49 C.F.R. § 387.15); Doc. 32, Ex. 1. In other words, "[t]he peculiar nature of the MCS–90 endorsement grants the judgment creditor the right to demand payment directly from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured." *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 442 (3d Cir. 2006). Consequently, the endorsement "presents neither a windfall for the motor carrier, nor does it alter the motor carrier's coverage under its other insurance policies." *Yeates*, 584 F.3d at 879. **If Global Hawk**

**believes the policy would not otherwise obligate it to compensate ECI for the remediation services, it is more than free to seek reimbursement from Ruiz.**

In conclusion, ECI's Motion for Summary Judgment [Doc. 35] is GRANTED, and Global Hawk's Motion for Summary Judgment [Doc. 32] is DENIED. **Judgment against Global Hawk will be entered in the amount of $126,431.10, less the $10,000 that Global Hawk has already paid to ECI, for a total of $116,431.10.**

*Env't Cleanup Inc. v. Ruiz Transp., LLC*, No. CIV-15-867-R, 2017 WL 2080270, at *5 (W.D. Okla. May 12, 2017) (emphases supplied)

That is ASIC's remedy here too, collect any Form F or MCS-90 payments

from its insured, YR&RY, that is the law.

Similarly, a District Court in Connecticut laid out why the MCS-90

endorsement covers such recovery and environmental costs:

In response to the passage of the MCA's minimum financial responsibility requirements mandate, the federal Secretary of Transportation promulgated a motor carrier endorsement form known as the MCS–90 endorsement. See 49 C.F.R. 387.15. "The MCS–90 endorsement constitutes such proof of requisite financial responsibility under the MCA. See 49 U.S.C. § 31139(f)(1)(A); 49 C.F.R. § 387.7(d)(1). Consequently, every liability insurance policy issued to motor carriers of interstate commerce contains the MCS–90 endorsement.... The MCS–90 endorsement, in pertinent part, provides that the motor carrier's insurer agrees to pay, within the limits of liability described herein, any final **\*221** judgment recovered against the insured **for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of** ... the [MCA] *whether or not the vehicle involved in the accident is specifically described in the policy.* 49 C.F.R. § 387.15.... *The MCS–90 endorsement is intended to impose a surety obligation on the motor carrier's insurer—in other words, the endorsement is a safety net that covers the public in the event other insurance coverage is lacking.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Herrod v. Wilshire Ins.*

*Co.,* supra, 499 Fed.Appx. at 755–56; see also *Century Indemnity Co. v.*
*Carlson,* 133 F.3d 591, 594 (8th Cir.1998) ("[t]he MCS–90 provides a broad
guaranty that the insurer will pay certain judgments ... regardless of whether
the motor vehicle involved is specifically described in the policy or whether
the loss was otherwise excluded by the terms of the policy").

*Martinez v. Empire Fire & Marine Ins. Co.,* 151 Conn. App. 213, 220–21, 94 A.3d
711, 715 (2014), <u>aff'd,</u> 322 Conn. 47, 139 A.3d 611 (2016) (emphasis supplied)

In the District Court of Massachusetts the Court also held that the Property

Damage Clause of the MCS-90 covers the **cost of towing, recovery, remediation**

**for a towing company removing vehicles from the roadway at the request of**

**law enforcement too**. *Direnzo Towing & Recovery, Inc. v. Owner-Operator Indep.*

*Drivers Ass'n, Inc.*, No. 4:16-CV-10073-TSH, 2018 WL 1940310, at \*15 (D. Mass.

Mar. 9, 2018).

In fact the definitions to the FMCSA Regulations define towing away

vehicles at a crash scene at the direction of a police officer an "**emergency**" caused

by negligent motor carrier's operations in causing a crash. See 49 C.F.R. § 390.5

"Emergency" ["**[O]r a request by a police officer for tow <u>trucks</u> to move**

**wrecked or disabled motor vehicles**" from the roadway.] That is exactly what

Wrecker 1, Inc. pled.

Georgia has adopted the FMCSA Regulations including § 390.5 by statute.

O.C.G.A. §§ 40-1-54, 40-1-57, See Comp. R & Regs, *Georgia Department of*

*Public Safety Transportation Rulebook*, Chapter 1, § 1-1 "(a)The motor carrier

safety rules and regulations of the Department are the minimum safety

requirements for all motor carriers operating both for hire and in private

transportation in either interstate or intrastate commerce in Georgia, and to the

extent that they do not conflict with Georgia law; and where applicable, are the

same as the Motor Carrier Safety Regulations issued by the U.S. Department of

Transportation, Federal Motor Carrier Safety Administration, contained in Title 49

of the Code of Federal Regulations, Parts 350, 365, 376, 382, 383, 385, 386, 387,

and 390 through 397 (see Note), and as amended. (See Individual Section Pages

and Notes)."

In a more recent case regarding an insurer's obligation to pay towing,

storage, remediation, and recovery costs, the District Court made it clear that

Progressive's dilatory tactics to wait for a final judgment on an MCS-90

endorsement by a towing company were not well taken, and that Progressive was

only putting off that payment until another day in denying a motion to dismiss by

Progressive, but allowing it discovery before the hammer drops. *Superior Towing

& Transp., LLC v. J.B. Hunt Transp. Inc.*, No. 21-CV-00900-PGS-LHG, 2023 WL

2163467, at *2 (D.N.J. Feb. 22, 2023); *See also Superior Towing & Transp., LLC

v. J.B. Hunt Transp., Inc.*, No. 321CV00900PGSLHG, 2021 WL 4482824, at *6

(D.N.J. Sept. 30, 2021) [Default judgment against the motor carrier that did not

answer entered, and Progressive's motion to dismiss was denied on the MCS-90

endorsement and Form BMC-91X.]

YR&RY is in default here too, and ASIC is trying to skirt its obligation under the MCS-90 Endorsement for its insured's actions under its policy as pled by Wrecker 1. *Id.* Again, Accredited has a remedy, post-judgment, against its insured YR&RY, and it can chase YR&RY for any payment made under either a Form F or MCS-90 endorsement, but that is not Wrecker 1, Inc.'s dilemma and is part of the risk ASIC undertook in insuring YR&RY's motor carrier for hire operations with an MCS-90 endorsement attached to that policy. That is the law. *Id.*

Finally, ASIC makes a bald, naked claim that a direct action against it under O.C.G.A. § 40-2-140(d)(4) cannot survive because the MCS-90 endorsement to that policy provides no coverage, but **NONE** of the cases it cites supports that position and all the cases cited by plaintiff do provide coverage under either the Form F or MCS-90 endorsements. There is not a single reported decision in the state or federal district courts supporting ASIC's position, it is a frivolous position.

A policy issued to a motor carrier for hire with either a MCS-90 or Form F attached to it is subject to a direct action, as a matter of law. *Sapp v. Canal Ins. Co.*, 288 Ga. 681, 687, 706 S.E.2d 644, 650 (2011) ["To summarize the above, we now hold that, when an insurer purports to issue coverage to an insured which it knows is a motor carrier, the insurer assumes responsibility to indemnify the motoring public for injuries sustained by virtue of the carrier's negligence **in at least the minimum amount statutorily required under the Motor Carrier**

**Act and up to the policy limits, notwithstanding any provisions in the insurance policy to the contrary.**"] (emphasis supplied)

YR&RY and RUSA Trucking are responsible for the towing, storage, and recovery costs for removing their vehicles from the roadway, and ASIC cannot avoid its responsibility for that cost under its policy.

YR&RY, RUSA Trucking and ASIC have simply adopted a position of we are not paying for removing our vehicles, sue us, when you do sue us we'll engage in a charade of a "global mediation" with a $21,000 per day mediator and offer you nothing, claiming a coverage issue. Then we will allow our insureds to go into default, and file meritless motions to dismiss and open default hoping to avoid our coverage obligations set by federal regulations and interpreting caselaw that are clear we have to pay. See 49 C.F.R. § 387.15; *Direnzo Towing, supra*.

The claim for fees and costs is valid in this matter, as there is no bona fide dispute as to defendants and ASIC's obligations to pay the towing and recovery under either the Form F or MCS-90 endorsement to its policy, nor the amount of the claim, on a motion to dismiss. O.C.G.A. § 13-6-11, "The issue of attorney fees under O.C.G.A. § 13-6-11 is a question for the jury and an award will be upheld if there is any evidence to support it." *Duffy St. S.R.O., Inc. v. Mobley*, 266 Ga. 849, 850, 471 S.E.2d 507 (1996). See also *City of Hoschton v. Horizon Communities*, 287 Ga. 567, 569, 697 S.E.2d 824 (2010) ("An award of attorney fees under

O.C.G.A. § 13-6-11 will be affirmed if there is any evidence to support it.").

*Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 89, 885 S.E.2d 671, 705 (2023).

Wrecker 1 did not ask to be called on Thanksgiving Day to remove the defendants' inoperable vehicles from the road, but it answered the call and removed them as required. Now it simply asks to be paid, including for attorneys' fees and costs, as provided by law.

## CONCLUSION

Wrecker 1 asks that YR&RY's motion to open default be denied, that default judgment against YR&RY, Serzule and Rodriguez-Paez be granted for the liquidated damages incurred in this matter, and that Accredited Specialty be required to indemnify its insured for Wrecker 1's claims as provided by Georgia law under the MCS-90 endorsement. Finally, RUSA Trucking is responsible for the removal of its tractor lent to YR&RY and that summary judgment against it too be granted for that cost of removal.

Dated:        November 8, 2024.

RESPECTFULLY SUBMITTED,

**COUNSEL FOR PLAINTIFF
WRECKER 1, INC.:**

By:    */s/ Terry D. Jackson*
TERRY D. JACKSON
Georgia Bar No. 386033



*"We Know Trucks"*
www.terryjacksonlaw.com

TERRY D. JACKSON, P.C.
600 Edgewood Avenue
Atlanta, Georgia 30312
(404) 216-5312 cell
(404) 659-2400 office
(404) 659-2414 fax
terry@terryjacksonlaw.com